# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| REBECCA ZANDER,<br>    Plaintiff,<br><br>v.<br><br>SAMUEL ORLICH, JR. and JOHN BUNCICH,<br>    Defendants. | Cause No.: 2:14-CV-400-PRC |

## OPINION AND ORDER

This matter is before the Court on Defendant Samuel Orlich Jr.'s Motion for Summary Judgment [DE 63], filed on December 30, 2016. For the reasons stated below, the motion is denied.

## PROCEDURAL BACKGROUND

Plaintiff Rebecca Zander initiated this cause of action on November 3, 2014, by filing a Complaint. With the Court's leave, Zander filed an Amended Complaint on June 23, 2015. In the Amended Complaint, Zander brings claims against Samuel Orlich, Jr. in his individual and official capacities, John Buncich, and Lake County, Indiana.

On December 23, 2016, an agreed Motion to Dismiss was filed as to Zander's claims against Orlich in his official capacity. The Court granted that Motion on January 3, 2017.

On January 10, 2017, an agreed Motion to Dismiss was filed as to Zander's claims against Lake County, Indiana. The Court granted that motion on January 11, 2017.

On December 20, 2016, Orlich filed the instant Motion for Summary Judgment along with a brief in support of the motion. Zander filed a response on January 27, 2017. Orlich filed a reply on February 9, 2017. The motion is ripe and ready for ruling.

Buncich filed a separate Motion for Summary Judgment on December 28, 2016. That motion remains pending.

Zander and Orlich orally agreed on the record and Buncich filed a form of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure require that a motion for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56 (a), (c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there

is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Spierer*, 798 F.3d at 507-08; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(c)(1), (e); *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1986)). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-50.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014);

*Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

On September 19, 2013, Orlich was working as a deputy for the Lake County Sheriff's Department (LCSD). He was wearing his LCSD uniform, wearing a LCSD badge, and carrying on his gun belt a Glock .40 caliber gun, two sets of handcuffs, and two handgun magazines.

That same day, Zander's husband called county dispatch to report a domestic disturbance at his residence on Georgia Street. Dispatch did not initially send Orlich to the call, but Orlich indicated that he would go on the call. Orlich was driving his LCSD-issued police vehicle. Orlich called dispatch to obtain details regarding the divorce proceedings between Zander and her husband. Zander's husband had previously told Orlich that Zander was a "lying whore" and a "drug addict."

Some time after his arrival at the scene, Orlich told Zander that she must leave the Georgia Street home and go to her other house on White Oak Avenue or go to the Lake County Jail. Orlich testified that this was done in order to give Zander and her husband a cool-down period. Zander told Orlich that she could not go to the White Oak Avenue house because the furnace and electric panel had been dismantled.

Officer Michael Miller was also at the scene and was the supervising officer. Miller described Zander as upset, flustered, and talking fast. Miller did not recall, nor did his narrative report indicate, any reason why Zander could not drive her own vehicle to the White Oak Avenue house. Zander and her husband both testified that the officers said that Zander was not in a condition to drive.

4

Orlich testified that he received permission from Officer Miller to take Zander to the White Oak Avenue house and to perform work on the furnace and electrical panel. Officer Miller testified that he gave Orlich permission to transport Zander to the White Oak Avenue house but that he did not discuss or give permission for Orlich to perform any work inside the White Oak Avenue house.

After arriving at the White Oak Avenue house, Orlich radioed dispatch and indicated that he was available for calls. Orlich entered the White Oak Avenue house. Orlich and Zander went to the basement, and Orlich turned on the electricity and water heater. Orlich also looked at the furnace but was unable to fix it. Zander testified that Orlich told Zander she was allowed to return to the Georgia Street house at 2:30 p.m. Zander also testified that Orlich left the house, and Zander closed the house door.

Zander's description of the alleged sexual encounter is as follows. Zander entered the master bathroom. About ten or fifteen minutes after Orlich left the house, Zander exited the bathroom and found Orlich standing naked with an erection, holding a pair of white lace underwear. His uniform and gun belt were in the room. Zander was in shock and "was like, Oh, my God. Please don't even tell me what I think is about to happen is going to happen." (Zander Dep. 63:8-10, ECF No. 71-3). Orlich grabbed Zander by the arms, threw her down on the bed, got on top of her, and lifted her shirt. Orlich put his penis between her breasts and screamed "suck my balls." *Id.* at 63:2-3. Orlich pushed Zander's head up so it was closer to his genitals and put his testicles in Zander's mouth. Zander asked Orlich not to rape her. Orlich ejaculated on Zander. After Orlich ejaculated, he got up to get his clothes, and Zander crawled to the bathroom and locked the door. Orlich banged loudly on the bathroom door and said that the encounter had to stay between Orlich and Zander and that he could make Zander's life very difficult if she said anything.

5

Orlich also told Zander that she could not stay in the White Oak Avenue house, that she had to go with Orlich, and that he would take her to her friend's house.

Orlich describes the sexual encounter as follows. Inside the White Oak Avenue house, Zander indicated that her husband referred to her as a whore and a pill popper and accused her of having fake breasts. Zander lifted up her shirt, showed Orlich her breasts and asked "Do these look fake to you?" (Orlich Dep. 56:2-3, ECF No. 65-2). Zander then grabbed Orlich's hands and put them on her breasts. Zander walked Orlich to the bedroom, undressed Orlich completely and herself down to her underwear, and began to perform oral sex on him. Zander then laid down on the bed, told Orlich to get on top of her, and gave him permission to ejaculate on her. Orlich straddled Zander's midsection and ejaculated on her chest. Orlich and Zander got up, Orlich dressed, and Zander cleaned herself. Zander asked Orlich to give her a ride to her friend's house.

After the sexual encounter, Zander entered Orlich's squad car. Orlich took Zander to her friend's house. Later that day, Zander reported the incident to the Indiana State Police. Photographs were taken of bruising on her upper arms.

## ANALYSIS

Zander brings claims against Orlich under Section 1983, sexual battery, and false imprisonment. Orlich argues that he is entitled to summary judgment on all three claims. The Court will address each claim in turn.

### A. Section 1983

In the Amended Complaint, Zander alleges a constitutional violation under 42 U.S.C. § 1983 by Orlich. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 itself does not establish substantive rights; rather, it is a vehicle for vindicating federal rights conferred elsewhere. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). In this case, Zander seeks redress for alleged violation of her substantive due process liberty rights as protected by the Fourteenth Amendment.

To state a claim under § 1983, a plaintiff must show (1) that she "was deprived of a right secured by the Constitution or federal law" (2) "by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). Orlich argues that Zander cannot produce evidence to show that Orlich was acting under color of law.

"Not every action by a state official or employee is to be deemed as occurring 'under color' of state law." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (quoting *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir.1989)) "[R]ather, action is taken under color of state law 'when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *Honaker v. Smith*, 256 F.3d 477, 484–85 (7th Cir.2001)); *see also West v. Atkins*, 487 U.S. 42, 49-50 (1988) ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State."). To determine whether Orlich was acting under color of state law, the correct inquiry is whether Orlich's actions "related in some way to the performance of a police duty." *Gibson v. City of Chi.*, 910 F.2d 1510, 1517 (7th Cir. 1990) (citing *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980).

7

Zander and Orlich both cite to *Rogers v. City of Little Rock*, 152 F.3d 790 (8th Cir. 1998), in support. In *Rogers*, the plaintiff sued a police officer who had raped her. The Eighth Circuit Court of Appeals upheld a bench trial verdict in the plaintiff's favor against the police officer's challenge that he was not acting under color of law during the rape.

The police officer argued that he had made substantial departures from his duties—and thus was not acting under color of state law—when he did not have the plaintiff's car towed and instead followed her home and had sexual intercourse with her. The court disagreed, finding that the officer "relied on his authority as a police officer to facilitate the assault." *Id.* at 798. In support of this finding, the court cited to the initial contact arising out of the officer's duties (stopping the plaintiff for having a broken tail light), raising a possibility that was detrimental to the plaintiff (having her car towed), relieving her from that possibility (letting her go home), and then having nonconsensual sexual contact with the plaintiff. The court also noted that the defendant remained in uniform and the plaintiff testified that she felt she had to cooperate with the defendant's demand because he was a police officer.

The *Rogers* matter, though not precedential authority here, is persuasive authority in favor of finding that Orlich acted under color of state law. Like the *Rogers* defendant, Orlich was a police officer. In construing all issues of fact in the light most favorable to Zander, the circumstances were as follows. Orlich's initial contact with Zander arose out of his duties—responding to the domestic disturbance call. He gave Zander two options—she could either go to the Lake County Jail, or she could go to the house on White Oak Avenue. Once Zander was at the White Oak Avenue house (and thus Zander going to the Lake County Jail removed as a possibility), Orlich told Zander that she could not return to the Georgia Street home until later that afternoon. Orlich then had nonconsensual sexual contact with Zander. Orlich

was not wearing his uniform, but it was present in the room, and the assault occurred only ten or fifteen minutes after Zander had last seen Orlich in his uniform. That is, like in *Rogers*, Orlich took advantage of a situation arising out of his official duties, presented Zander with an undesirable option, ultimately chose a different option, and because of that option was able to misuse his authority by sexually assaulting Zander.

Orlich argues that his brief absence from the house provides a line of separation—the time that he spent in the house the first time, when he restored electricity and water to the house, was part of his official duties, but time that he spent in the house the second time—when the sexual encounter occurred—was a "private visit." This argument is unpersuasive. First, Orlich's absence from the house was no longer than fifteen minutes, and was likely shorter, as he was fully unclothed before Zander discovered Orlich and he had had time to locate a pair of lace underwear. Second, Zander was still under Orlich's order to not return to the Georgia Street home when Orlich re-entered the house, so Orlich was still exercising police authority over Zander. Third, though Orlich had removed his clothing by the time Zander saw him, it is reasonable to infer that he entered the house clothed in his uniform. Fourth, Orlich had indicated to dispatch that he was available for calls before he entered the house the first time and never indicated to dispatch that he had gone off duty.

A reasonable jury could conclude that Orlich's actions were related to his official duty to respond to domestic disturbance calls, that Orlich misused his authority to create the opportunity to sexually assault Zander, and that his assault of Zander was conducted under color of state law.

### B. Sexual Battery

Next, Zander brings a claim of "sexual battery." In Indiana, sexual battery is not recognized as a specialized tort separate from battery. *Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 913 (S.D.

Ind. 2009); *Oliver by Hines v. McClund*, 919 F. Supp. 1206, 1219 (N.D. Ind. 1995). Accordingly, the Court interprets the claim of sexual battery as a claim of battery. *See Pritchett v. Heil*, 756 N.E.2d 561, 566 (Ind. Ct. App. 2001) (analyzing a claim of sexual battery as a claim of battery); *see also Lessley*, 654 F. Supp. 2d at 913 (same).

In Indiana, a person is liable for the tort of battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Sign v. Lyday*, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008) (quoting *Mullings v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007)).

Orlich mistakenly argues that Zander must show the elements of the *crime* of sexual battery, which is codified in the Indiana Code at § 35-42-4-8(a).[1] Relying on this mistake, Orlich argues that Zander must show that she was incapacitated such that she could not give consent, was compelled to submit by force or imminent threat of force, or was unaware that the touching was occurring, and Orlich asserts that Zander has no evidence to prove that any of these criteria were met.

---

[1]Subsection (a) provides:

(a) A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person:
    (1) touches another person when that person is:
        (A) compelled to submit to the touching by force or the imminent threat of force; or
        (B) so mentally disabled or deficient that consent to the touching cannot be given; or
    (2) touches another person's genitals, pubic area, buttocks, or female breast when that person is unaware that the touching is occurring;
commits sexual battery, a Level 6 felony.

Ind. Code § 35-42-4-8(a). Orlich quotes this subsection in full in his brief.

Zander does not need to prove incapacitation, threat or use of force, or unawareness in order to succeed on her battery claim under Indiana tort law. Regarding this claim, Orlich has failed to meet his burden of pointing to a lack of evidence to support Zander's case.

### C. False Imprisonment

Zander's final claim against Orlich is for false imprisonment. Under Indiana law, false imprisonment is "unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420, 432 (Ind. Ct. App. 2016) (quoting *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104-05 (Ind. Ct. App. 2002)).

Zander argues that Orlich falsely imprisoned her at three separate times. Zander asserts she was falsely imprisoned when (1) Orlich ordered her to stay at the White Oak Avenue house, (2) Orlich grabbed Zander's arms, threw her on the bed, and got on top of her, and (3) Orlich made Zander leave the White Oak Avenue house with Orlich.

Orlich argues that he is entitled to summary judgment on these claims of false imprisonment because (1) no evidence shows that Zander did not consent during the sexual encounter, (2) no evidence indicates that his actions were intended to restrain Zander from leaving, (3) Orlich acquiesced to Zander's request to go to a friend's house, so Zander was not confined to the house, and (4) Orlich's transportation of Zander to the house is covered by immunity because the evidence shows that transportation to the house was within the scope of Orlich's employment and was not willful, wanton, or malicious.[2]

*1.     Order to Stay at White Oak Avenue House*

---

[2]Orlich also argues that he has qualified immunity for his actions transporting Zander to the White Oak Avenue house in his squad car. Because Zander does not claim that Orlich falsely imprisoned Zander in the squad car on the drive to the White Oak Avenue house, the Court does not address this issue.

11

Zander's Amended Complaint does not allege that Orlich falsely imprisoned her by ordering her to stay at the White Oak Avenue house. However, "a pleading can be constructively amended when both parties expressly or impliedly consent to the constructive amendment." *Hutchins v. Clarke*, 661 F.3d 947, 957 (7th Cir. 2011) (citing Fed. R. Civ. P. 15(b); *In re Prescott*, 805 F.2d 719, 725 (7th Cir. 1986)). Federal Rule of Civil Procedure 15(b) provides for amendment of pleadings during and after trial, and provides, in relevant part: "The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits," and "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(1), (2). "The test for such consent is whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *Prescott*, 805 F.2d at 725 (internal quotation marks omitted).

Orlich does not object to this claim—which is raised in Zander's response—not appearing in the Amended Complaint. Further, Orlich, in his reply brief, addresses this claim, concedes that he ordered Zander to stay at the White Oak Avenue house until 2:30 p.m., and argues that he is not liable for false imprisonment for his actions because he was acting within the scope of his official duties and his actions are therefore covered by Orlich's immunity under the Indiana Tort Claims Act (ITCA). The Court finds that Zander's Amended Complaint has been constructively amended to add this claim of false imprisonment. Orlich had a fair opportunity to defend this claim and has presented a defense against it. *See Hutchins*, 661 F.3d at 957.

Now that this claim is before the Court, the Court turns to Orlich's argument that he is immune from suit on this claim under ITCA. ITCA provides that, for employees of governmental entities, "[a] lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. C. § 34-13-3-5(c). Otherwise, the employee cannot be sued individually for his or her torts.

Orlich states that he was acting within the scope of his official duties and that Zander failed to allege that he acted willfully, wantonly, or maliciously. Orlich cites to *Long v. Barrett*, 818 N.E.2d 18, 24 (Ind. Ct. App. 2004), to support his position that Zander must allege that Orlich acted willfully and wantonly or, alternatively, maliciously. However, as the quoted section of ITCA provides, suit can also be brought against governmental employees if the complained of act is alleged to have been calculated to benefit the employee personally (or is criminal). The *Long* court did not address the "calculated to benefit the employee personally" method of avoiding ITCA immunity, perhaps because the facts of that case did not warrant addressing this method. At any rate, it is clear from the statute that alleging actions calculated to benefit the employee personally negate ITCA immunity. Ind. C. § 34-13-3-5(c)(5). Further, the Indiana Court of Appeals has recognized that the personal benefit exception to immunity exists in a case more recently decided than *Long*. *See Waldrip v. Waldrip*, 976 N.E.2d 102, 116 (Ind. Ct. App. 2012).

Zander argues that Orlich's order to Zander was made in order to isolate Zander in "a very secluded location where he could be alone with her and force himself on her, since Orlich had been told earlier by her husband that she was a pill popping whore." (Resp. p. 19, ECF No. 71). Thus, Zander is arguing that Orlich's order was calculated to benefit Orlich personally. The Court finds Zander's allegation

that Orlich isolated Zander in order to sexually assault her to be sufficient to allege that Orlich's actions were calculated to personally benefit Orlich. Accordingly, Orlich cannot rest on ITCA immunity to avoid suit on this claim.

As stated above, however, Zander cannot rest on her pleadings at this stage of litigation. Zander has presented evidence of the following. Orlich was previously told by Zander's husband that Zander was a "lying whore" and a "drug addict." Orlich was not initially dispatched to the domestic disturbance at the Zander residence. He volunteered to respond to the call. Without authorization, Orlich entered the White Oak Avenue house. Orlich left Zander in the house alone and ordered her not to leave until 2:30 p.m. Shortly thereafter, Orlich returned to the house, removed his clothes, and sexually assaulted Zander.

Orlich does not argue that this evidence, if determined to be true, does not permit a reasonable jury to determine that Orlich's order to Zander was calculated to benefit Orlich personally by providing circumstances under which Orlich could isolate Zander and force her to engage with Orlich sexually. Though Orlich argues that Zander has not alleged satisfaction of some of the ways in which a tort claim can be brought against a governmental employee—actions that are clearly outside the scope of employment, willful and wanton, or malicious—only one of the ways must be met. Zander is proceeding on a theory that Orlich's actions were calculated to bring him personal benefit, and Orlich fails to argue that this means of avoiding ITCA immunity has not been met by Zander's evidence when viewed most favorably to her. Orlich has not met his burden of identifying a lack of evidence in Zander's claim of false imprisonment as a result of the order to stay at the White Oak Avenue house. Orlich is not entitled to summary judgment on this claim.

2. *Restraint on the Bed*

A genuine issue of material fact exists as to whether Orlich restrained Zander without consent on the bed. Orlich maintains that no evidence shows that he intended to keep Zander from leaving. However, at this stage the Court must view the facts in the light most favorable to Zander, which are as follows. After Orlich's re-entry into the house, Orlich removed his clothes and was waiting for Zander when she exited the bathroom. He threw her onto the bed and climbed on top of her. Zander's arms developed bruises after the encounter, Zander told Orlich not to rape her, and Orlich held Zander's head so it was closer to his penis. A reasonable jury could determine that Zander did not consent to the encounter and that Orlich intended to restrain Zander's movements. Orlich is not entitled to summary judgment on this claim.

3. *Transportation to Friend's House*

Another genuine issue of material fact exists. Orlich maintains that Zander asked Orlich for a ride to her friend's house and Orlich acquiesced. According to Zander, she locked herself in the bathroom, and Orlich banged loudly on the bathroom door and said that the encounter had to stay between Orlich and Zander and that he could make Zander's life very difficult if she said anything. Orlich proceeded to tell Zander that she could not stay at the White Oak Avenue house and that she had to go with Orlich. Orlich argues that, because he transported Zander to her friend's house, Zander consented to the transportation and there was consequently no false imprisonment. Thus, Orlich argues that Zander has not met the requirement of showing that Orlich's actions were done without Zander's consent. However, in resolving all conflicts of fact in favor of Zander, she had to leave the house with Orlich. Though she had a choice as to her ultimate destination, she was coerced into leaving the house and getting into Orlich's police vehicle. A reasonable jury could conclude that Zander did not consent to leaving the house with Orlich and getting into his police vehicle. Orlich is not entitled to summary judgment on this claim.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Defendant Samuel Orlich Jr.'s Motion for Summary Judgment.

SO ORDERED this 25th day of May, 2017.

                                              s/ Paul R. Cherry
                                              MAGISTRATE JUDGE PAUL R. CHERRY
                                              UNITED STATES DISTRICT COURT