UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| REBECCA ZANDER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 2:14-CV-400-PRC |
| | ) | |
| SAMUEL ORLICH, JR. and JOHN BUNCICH, | ) | |
| Sheriff of Lake County, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Sheriff John Buncich['s] Motion for Summary Judgment [DE 59], filed on December 28, 2016. For the reasons stated below, the Court grants the motion.

## PROCEDURAL BACKGROUND

Plaintiff Rebecca Zander initiated this cause of action on November 3, 2014, by filing a Complaint. With the Court's leave, Zander filed an Amended Complaint on June 23, 2015. In the Amended Complaint, Zander brings claims against Samuel Orlich, Jr. in his individual and official capacities; John Buncich, Sheriff of Lake County, Indiana; and Lake County, Indiana.

On December 23, 2016, an agreed Motion to Dismiss was filed as to Zander's claims against Orlich in his official capacity. The Court granted that Motion on January 3, 2017.

On December 30, 2016, Orlich filed a Motion for Summary Judgment. The Court denied that motion on May 25, 2017.

On January 10, 2017, an agreed Motion to Dismiss was filed as to Zander's claims against Lake County, Indiana. The Court granted that motion on January 11, 2017.

On December 28, 2016, Buncich filed the instant Motion for Summary Judgment and a memorandum in support. On January 25, 2017, Zander filed a response. Buncich filed a reply on February 8, 2017. The motion is fully briefed and ripe for ruling.

Zander and Orlich orally agreed on the record and Buncich filed a form of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure require that a motion for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56 (a), (c). The moving party may discharge its initial responsibility by simply

"'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Spierer*, 798 F.3d at 507-08; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(c)(1), (e); *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1986)). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-50.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to

evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

On September 19, 2013, Orlich was working as a deputy for the Lake County Sheriff's Department (LCSD). He was wearing his LCSD uniform, wearing a LCSD badge, and carrying on his gun belt a Glock .40 caliber gun, two sets of handcuffs, and two handgun magazines.

That same day, Zander's husband called county dispatch to report a domestic disturbance at his residence on Georgia Street. Dispatch did not initially send Orlich to the call, but Orlich indicated that he would go on the call. Orlich was driving his LCSD-issued police vehicle. Orlich called dispatch to obtain details regarding the divorce proceedings between Zander and her husband.

Some time after his arrival at the scene, Orlich told Zander that she must leave the Georgia Street home and go to her other house on White Oak Avenue or go to the Lake County Jail. Orlich testified that this was done in order to give Zander and her husband a cool-down period. Zander told Orlich that she could not go to the White Oak Avenue house because the furnace and electric panel had been dismantled.

Officer Michael Miller was also at the scene and was the supervising officer. Miller described Zander as upset, flustered, and talking fast. Miller did not recall, nor did his narrative report indicate, any reason why Zander could not drive her own vehicle to the White Oak Avenue house. Zander and her husband both testified that the officers said that Zander was not in a condition to drive.

Orlich testified that he received permission from Officer Miller to take Zander to the White Oak Avenue house and to perform work on the house's furnace and electrical panel. Officer Miller

testified that he gave Orlich permission to transport Zander to the White Oak Avenue house but that he did not discuss or give permission for Orlich to perform any work inside the White Oak Avenue house.

After arriving at the White Oak Avenue house, Orlich radioed dispatch and indicated that he was available for calls. Orlich entered the White Oak Avenue house. Orlich and Zander went to the basement, and Orlich turned on the electricity and water heater. Orlich also looked at the furnace but was unable to fix it. Zander testified that Orlich told Zander she was allowed to return to the Georgia Street house at 2:30 p.m. Zander also testified that Orlich left the house and that Zander closed the house door.

Zander's description of the alleged sexual encounter is as follows. Zander entered the master bathroom. About ten or fifteen minutes after Orlich left the house, Zander exited the bathroom and found Orlich standing naked with an erection, holding a pair of white lace underwear. His uniform and gun belt were in the room. Zander was in shock and "was like, Oh, my God. Please don't even tell me what I think is about to happen is going to happen." (Zander Dep. 63:8-10, ECF No. 71-3). Orlich grabbed Zander by the arms, threw her down on the bed, got on top of her, and lifted her shirt. Orlich put his penis between her breasts and screamed "suck my balls." *Id.* at 63:2-3. Orlich pushed Zander's head up so it was closer to his genitals and put his testicles in Zander's mouth. Zander asked Orlich not to rape her. Orlich ejaculated on Zander. After Orlich ejaculated, he got up to get his clothes, and Zander crawled to the bathroom and locked the door. Orlich banged loudly on the bathroom door and said that the encounter had to stay between Orlich and Zander and that he could make Zander's life very difficult if she said anything. Orlich also told Zander that she could not stay in the White Oak Avenue house, that she had to go with Orlich, and that he would take her to her friend's house.

Orlich testified that the sexual encounter was initiated by Zander and was consensual.

After the sexual encounter, Zander entered Orlich's squad car. Orlich took Zander to her friend's house. Later that day, Zander reported the incident to the Indiana State Police.

Buncich testified as follows. As a sheriff's deputy, Orlich was authorized to have physical contact with private citizens, such as during an arrest, helping a person in or out of a vehicle, or other times when necessary. He was not authorized to have sexual relations with Zander while on duty, regardless of whether Zander consented to Orlich's actions. Sheriff's deputies have authority to make decisions and to act on their own while on the job, and deputies have the authority to arrest, ticket, and take individuals to jail.

## ANALYSIS

Zander brings Indiana state law tort claims against Buncich in his official capacity. Zander alleges that Buncich is vicariously liable for Orlich's alleged torts pursuant to the doctrine of *respondeat superior* and that Buncich negligently hired, trained, and retained Orlich. The Court must apply Indiana law as the Indiana Supreme Court would apply it. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000).

### A. *Respondeat Superior*

The parties dispute whether Indiana Code section 36-2-16-3 renders Buncich liable for Orlich's actions. Section 36-2-16-3 provides that an officer is responsible for all of the official acts of the deputies appointed by that officer in accordance with that chapter of the Indiana Code. Buncich argues that he is responsible for only the first or chief deputy and not any subsequent deputies. In support, Buncich cites to Indiana Code section 36-2-16-4. However, this section authorizes Buncich to appoint a first or chief deputy "and also . . . other full-time or part-time deputies . . . authorized by the county fiscal body." Section 36-2-16-4 makes an officer responsible

for the official acts of all of the deputies, not just the first or chief deputy. Buncich also argues that Orlich's actions were not "official acts." Zander has presented no evidence that Orlich's actions were "official acts." Therefore, her reliance on section 36-2-16-3 is misplaced. However, the doctrine of *respondeat superior* exists separately from this code section.

"The general rule is that vicarious liability will be imposed upon an employer under the doctrine of *respondeat superior* where the employee has inflicted harm while acting 'within the scope of employment.'" *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008) (citing *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 148 (Ind. 1999); *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997); *Helfrich v. Williams*, 84 Ind. 553, 554-55 (1882)). "[I]n order for an employee's act to fall 'within the scope of employment,' the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Id.* at 283-84 (citing *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000); *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993); *Hurlow v. Managing Partners, Inc.*, 755 N.E.2d 1158, 1162 (Ind. Ct. App. 2001)).

Zander argues that there should be a more specific rule for police or sheriff's departments that brings more actions under *respondeat superior* liability. In support, Zander relies heavily on *dicta* in *West v. Waymire*, 114 F.3d 646 (7th Cir. 1997). In *West*, there were no state tort claims brought against the employer, only federal claims to which *respondeat superior* does not apply. *Id.* at 649. Zander also supports her argument with *Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004), which applies Illinois law, and with cases that have no precedential authority here, such as *Mary M. v. City of Los Angeles*, 814 P.2d 1341 (Cal. 1991).

Zander has identified no case law from an Indiana state court indicating that Indiana state law on *respondeat superior* should include more actions when the employee is a police officer or

sheriff's deputy. She does cite, without analysis, *Ingram v. City of Indianapolis*, 759 N.E.2d 1144, 1146-48 (Ind. Ct. App. 2001). The *Ingram* decision is not a ruling on a motion for summary judgment. It is a decision on an appeal from a declaratory judgment determining whether the city had a duty to provide a defense for its police officer for actions alleged to have been completed within the scope of his official duties. The Indiana Court of Appeals determined that the allegations of the complaint sufficiently alleged that the police officer at issue used his powers to solicit sex and that the city was obligated to provide a defense. Unlike in *Ingram*, the Court is not looking at the sufficiency of Zander's allegations. Zander cannot rest on the allegations in her Amended Complaint to withstand the instant motion. Additionally, the Court does not see any statement in *Ingram*, and Zander has not identified one, that indicates that the scope of employment analysis is broader for police and sheriff's departments.

Further, even if the Court were "faced with two opposing and equally plausible interpretations of state law, [the Court would] generally choose the narrower interpretation which restricts liability." *Home Valu, Inc.*, 213 F.3d at 963 (internal quotation marks omitted) (quoting *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996)). Because there is no indication that Indiana courts would expand *respondeat superior* liability for police and sheriff's departments, the Court will apply the general rule.

Liability can be imposed upon employers under *respondeat superior* for the tortious or criminal acts of their employees. *See, e.g.*, *Stropes v. Heritage House Children's Ctr.*, 547 N.E.2d 247, 250 (Ind. 1989) (employee assault upon incapacitated patient); *Southport Little League v. Vaughan*, 734 N.E.2d 261, 268 (Ind. Ct. App. 2000) (equipment manager's molestation of participating youths). This is because "an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business,

even if the act was predominantly motivated by an intention to benefit the employee himself." *Stropes*, 457 N.E.2d at 247. "[T]he focus must be on how the employment relates to the context in which the commission of the wrongful act arose," and the nature of the acts must be "sufficiently associated" with the employer-authorized acts. *Id.* 249, 250. Several cases that were decided in Indiana state courts help clarify when an employee's tortious or criminal actions are within the scope of employment.

In *Stropes*, the employer was not entitled to summary judgment on *respondeat superior* claims when its employee, who was authorized to undress and bathe the employer's resident, sexually assaulted the resident in the middle of performing job functions. *Id.* at 249.

In *Vaughan*, the employer was not entitled to judgment on the evidence that it was not liable for acts of its employee where the employee was authorized to fit little league participants for their uniforms, and the employee molested some of the participants during a game in an equipment shed where the employee was authorized to be. 734 N.E.2d at 270.

In *Konkle v. Henson*, 672 N.E.2d 450 (Ind. Ct. App. 1996), though the minister allegedly molested the victim in the church building, no evidence was presented that he was engaging in employer-authorized acts at the time, so summary judgment in favor of the church on the issue of *respondeat superior* liability was proper. 672 N.E.2d at 457.

In *Harrison County Sheriff's Department v. Ayers*, 70 N.E.3d 414 (Ind. Ct. App. 2017), the employer was entitled to summary judgment on *respondeat superior* liability where the employee was an off duty sheriff's deputy who had an argument with his wife, which ended in her shooting herself with the deputy's police-issued gun. *Id.* at 418-19.

In *Barnett*, the deputy trustee was not authorized to touch—"[o]ther than perhaps a greeting handshake"—or confine applicants for assistance; the Indiana Supreme Court found the deputy

9

trustee's alleged acts of confining, sexually touching, and raping the plaintiff in a back room of the employer's office to be outside the scope of employment. *Barnett*, 889 N.E.2d at 286.

The context in which the alleged actions arose was Orlich's employment as a sheriff's deputy. He responded to a domestic disturbance call at the Zander residence, and, due to the nature of the call, he removed Zander to the White Oak Avenue house. A question of fact exists as to whether Orlich was authorized by his employer to enter the house to perform some repairs. Regardless of Orlich's authorization to be in the house to perform repairs, if the jury believes Orlich's set of facts regarding the sexual encounter then there was no tortious action, and, if the jury believes Zander's and Buncich's set of facts regarding the encounter, then Orlich left the White Oak Avenue house after the repairs and re-entered the house a few minutes later. Thus, when he entered the house a second time, he was not authorized by his employer to be there, as he had completed the repair work that may have authorized his presence in the house.

Zander presented three allegations of false imprisonment against Orlich. Only one of those instances occurred prior to Orlich leaving the White Oak Avenue house the first time—Orlich's order to Zander to stay in the White Oak Avenue house until 2:30 p.m. In Zander's argument that Buncich is not entitled to summary judgment on the *respondeat superior* claims, Zander does not argue or present evidence that Buncich should be held liable for this false imprisonment. Therefore, she has not met her burden to withstand the motion as to this allegation. The other two alleged instances of false imprisonment and the alleged sexual battery occurred after Orlich's first departure from the house—that is, after his authorization to be in the house concluded (if he ever possessed such authority).

In addition to his lack of authority to be in the house during the commission of the alleged torts, Orlich did not possess the authority to have sexual relations while on duty, though he did have

authority to touch members of the public when necessary. Unlike *Stropes* or *Vaughan* where the authorized touching was a specific part of the authorized duties regarding the victim—bathing a facility resident or fitting uniforms for little league players—there is no evidence here that Orlich had any specific duty or authority to touch Zander, beyond, perhaps, helping her in and out of his police vehicle after transporting her to the White Oak Avenue house. This case is more in line with *Barnett*, though Orlich possessed more, but not significantly more, authority to touch Zander than the possible handshake authorized to the employee in *Barnett*.

Given the context of the alleged torts (which occurred in a location that Orlich had no authority to be in at the time) and focusing on the association with the employer-authorized activities (sexual activity was not permitted, and there was no specific duty or authorization to touch Zander, beyond, perhaps, helping her in and out of Orlich's vehicle), the alleged tortious acts are not sufficiently associated with employer-authorized activities to be within the scope of employment. Because the actions are outside the scope of Orlich's employment, Buncich is entitled to summary judgment on the *respondeat superior* claims.

### B. Negligent Hiring, Training, and Retention

Zander brings claims of negligent hiring, training, and retention against Buncich in Paragraph 26 of her Amended Complaint. Zander argues that Buncich is liable for this negligence as to Orlich's alleged sexual misconduct. Zander does not argue that Buncich is liable for negligent hiring, training, and retention as to the alleged false imprisonment.

Indiana law recognizes a cause of action against an employer for negligent hiring, training, and retention of an employee. *See Hudgins v. Bemish*, 64 N.E.3d 923, 925-26 (Ind. Ct. App. 2016); *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994). The

standard set forth in Restatement (Second) of Torts § 317 governs these claims. *Hudgins*, 64 N.E.3d at 925-26; *Konkle*, 672 N.E.2d at 454. Section 317 of the Restatement provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if:
> (a)    the servant
>       (i)    is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant
>       (ii)    is using a chattel of the master, and
> (b)    the master
>       (i)    knows or has reason to know that he has the ability to control his servant, and
>       (ii)    knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965). Where a general duty has been articulated, foreseeability is "the critical inquiry" in determining whether the general duty applies to a particular scenario. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016). Existence of a duty is a matter of law for courts to decide. *Id.*

Though both parties state that duty is imposed if a reasonably foreseeable victim is injured by a reasonably foreseeable harm, that is not the appropriate inquiry. The Supreme Court of Indiana recently clarified that "in the duty arena, foreseeability is a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm." *Id.* at 325.

> A court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 391 (Ind. 2016) (alteration omitted) (quoting *Strahin v. Cleavenger*, 603 S.E.2d 197, 207 (W.Va. 2004)).

Here, the relevant "broad type of plaintiff" is a member of the public with whom a sheriff's deputy interacts in responding to a call. The broad type of harm is intentional torts against the person. The general rule states that there is a duty of the master to exercise reasonable care to control the servant to prevent such a harm against such a person, but with an important condition: this duty exists only if "the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 317. The parties dispute whether Buncich should have known of the necessity and opportunity for controlling Orlich.

In *Frye v. American Painting Co.*, 642 N.E.2d 995 (Ind. Ct. App. 1994), an employee was retained at his employment with the defendant painting company after he committed burglary, theft, and arson. 642 N.E.2d at 997. In his continued employment, the employee burglarized and set fire to a house he was painting as part of his employment. *Id.* The Indiana Court of Appeals determined that whether the employer should have foreseen that the employee posed a danger to its customers and whether it breached a duty to the plaintiff by retaining the employee should be resolved by a jury. *Id.* at 999.

In *Sandage v. Board of Commissioners of Vanderburgh County*, 897 N.E.2d 507 (Ind. Ct. App. 2008), Travis Moore was serving a sentence for robbery and was a participant in a work release program. *Id.* at 509. While participating in work release and working for Porter's Parking, Moore tested positive for drugs and had unaccountable time on one day. *Id.* A few months later, while still working for Porter's Parking on work release, Moore drove to an apartment and killed three people and himself. *Id.* at 509-10. Suit was brought against Porter's Parking for negligent hiring and retention. *Id.* at 510. The plaintiffs argued that Porter's Parking should have known about Moore's criminal history and drug use. *Id.* at 511. The Indiana Court of Appeals found that Porter's Parking

had no duty of care to Moore's victims. *Id.* at 514. In so finding, the court emphasized that Moore's actions were not a recurrence of Moore's earlier criminal behavior. *Id.* at 513-14 (citing *Clark v. Aris, Inc.*, 890 N.E.2d 760, 765 n.1 (Ind. Ct. App. 2008) (noting that an employee's criminal history of burglary, theft, and receiving stolen property does not render a subsequent murder by the employee a reasonably foreseeable harm)). The court also noted that Moore's employment did not put him in contact with the victims and that Moore was not authorized to enter the apartment by virtue of his employment. *Id.* at 513.

Buncich argues that he had no reason to suspect a need to control Orlich so as to prevent the alleged actions by Orlich, and, thus, Buncich owed no duty to Zander, and Zander's claims of negligent hiring, training, and retention fail.

Zander counters that Buncich should be held to have a duty to her. In support, Zander points to the power and control given to sheriff's deputies. Because they have the authority to detain criminal suspects and, in some circumstances, use deadly force, she argues that it is not surprising that occasionally deputies "misuse that authority by engaging in assaultive conduct." (Resp. at 21, ECF No. 69). Zander contends that sexual battery is subsumed within this larger category of misuse of authority. Zander does not mention any of Orlich's past conduct in arguing that summary judgment is not appropriate on these claims. Zander notes that the Seventh Circuit Court of Appeals suggested that "[m]aybe . . . a police department should be held strictly liable for torts of police officers who use their official powers to commit the torts." *Doe v. City of Chicago*, 360 F.3d, 667, 671 (7th Cir. 2004). That case, however, applied Illinois law and not Indiana law, and the court, far from holding that police departments should be strictly liable, was only suggesting strict liability as a possibility.

This Court rejects the idea that misconduct by a few bad actors should put all police departments and sheriff's departments on notice that each and every one of their police officers and sheriff's deputies may misconduct themselves; this cannot satisfy the requirement that the master know or should know cause to exercise control over the servant. As in *Sandage* and unlike in *Frye*, there is no evidence of Orlich misconducting himself on a previous occasion in the manner alleged in the instant suit. Buncich had no reason to know of the necessity of exerting control over Orlich so as to prevent Orlich's alleged sexual misconduct. Accordingly, Buncich had no duty to exercise reasonable care to control Orlich, and Buncich is entitled to summary judgment on the negligent hiring, training, and retention claims.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Defendant Sheriff John Buncich['s] Motion for Summary Judgment [DE 59].

SO ORDERED this 6th day of June, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT