# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| REBECCA ZANDER, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 2:14-CV-400-PRC |
|  | ) |  |
| SAMUEL ORLICH, JR., | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

This matter is before the Court on a Motion to Set Aside Judgment and for New Trial [DE 131], filed by Defendant Samuel Orlich, Jr. on August 28, 2017, and on a Motion for Hearing on Defendant's Motion to Set Aside Judgment and for New Trial [DE 139], filed by Orlich on September 6, 2017. For the reasons stated below, the Court denies both motions.

## PROCEDURAL BACKGROUND

Plaintiff Rebecca Zander initiated this cause of action on November 3, 2014, by filing a Complaint. With the Court's leave, Zander filed an Amended Complaint on June 23, 2015. In the Amended Complaint, Zander brought claims against Samuel Orlich, Jr. in his individual and official capacities, John Buncich, and Lake County, Indiana. Zander alleged that Orlich committed the torts of battery and false imprisonment and violated Zander's federal civil rights by committing sexual battery against her.

All claims except the individual capacity claims against Orlich were resolved prior to trial. The claims against Orlich in his individual capacity proceeded to jury trial, which was held from July 31, 2017, through August 2, 2017. At trial, Zander moved to admit a report by expert witness Dr. Judith DeGrazia Harrington into evidence. Orlich objected, and Zander withdrew the motion to admit the report. The report was mistakenly provided to the jury for use in deliberations. Also at

trial, Orlich moved to admit Zander's medical records. Zander objected, and Orlich ultimately withdrew his offer of the medical records into evidence.

The jury deliberated from 2:58 p.m. to 5:58 p.m. on August 2, 2017, and returned verdicts in favor of Zander and awarded $100,000 in compensatory damages and $275,000 in punitive damages. The Court directed the Clerk of Court to enter judgment on the verdict. Judgment was entered on August 4, 2017.

On August 28, 2017, Orlich filed the instant Motion to Set Aside Judgment and for New Trial. Zander filed a response on August 31, 2017. Orlich filed a reply on September 6, 2017. The motion is fully briefed and ripe for ruling. Also on September 6, 2017, Orlich filed the instant Motion for Hearing on Defendant's Motion to Set Aside Judgment and for New Trial. Zander did not respond to the latter motion.

Zander and Orlich orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## STANDARD

Federal Rule of Civil Procedure 59 allows the Court to grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A motion for a new trial must be filed no later than 28 days after the entry of judgment. *Id.* at 59(b).

Generally speaking, materials not admitted into evidence should not be given to the jury for use in deliberations. *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 705 (7th Cir. 2013). "When unapproved material reaches the jury, the trial court must decide whether there is a

reasonable possibility the material altered the jury's verdict." *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 483 (7th Cir. 2000) (citing *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1142 (7th Cir. 1992)). If a reasonable possibility exists, then the Court must order a new trial. *Deicher v. City of Evansville, Wis.*, 545 F.3d 537, 543 (7th Cir. 2008). Whether there is such a possibility is left to the Court's discretion. *See Artis*, 967 F.2d at 1142.[1]

When non-evidence is duplicative of other evidence, including trial testimony, courts tend to find no reasonable possibility that the non-evidence altered the jury's verdict. *See Bankcard Am., Inc.*, 203 F.3d at 483; *Artis*, 967 F.2d at 1143; *Arnold v. Pfizer, Inc.*, No. 3:10-CV-01025-AC, 2015 WL 268967 at *16 (D. Or. Jan. 21, 2015) (finding no reasonable possibility that the provision of non-evidence—an expert witness's report—to the jury altered the jury's verdict where the purportedly prejudicial statement in the report had been discussed during trial testimony).

On the other hand, if the party moving for new trial was lulled into thinking that the party would not need to mitigate the effects of the non-evidence on the jury because the party believed that the jury would not see the non-evidence, then that is a factor in favor of finding a reasonable possibility that the non-evidence altered the jury's verdict. *Baugh*, 730 F.3d at 711.

Further, the jury should not be questioned as to whether they considered the non-evidence, *Artis*, 967 F.2d at 1142, but the Court may consider the timing of the provision of the non-evidence in relation to the rendering of the jury's verdict, *see Baugh*, 730 F.3d at 711 (finding timing to be a factor where jury deliberations lasted three days and the jury reached its verdict shortly after it was permitted to examine non-evidence).

---

[1] Orlich cites non-precedential case law from outside of the Seventh Circuit to support his argument that Zander bears the burden to show that the jury's exposure to non-evidence was not prejudicial. The Court has not found any precedential case law supporting the shifting of the burden in this circuit and therefore declines to shift the burden away from the moving party.

Orlich, in reply, devotes considerable attention to *United States v. Bruscino*, 662 F.2d 450 (7th Cir. 1981), in which the trial court's denial of a new trial was reversed. However, as Orlich notes, this opinion was reversed following *en banc* rehearing, 687 F.2d 938 (7th Cir. 1982), because the three-judge panel employed an erroneous standard of review. The result after the *en banc* rehearing was affirmation of the trial court's denial of new trial. Thus, the overturned decision granting a new trial in a criminal case is of limited use to the Court in the instant civil matter.

## ANALYSIS

Orlich argues that there is a reasonable possibility that the provision to the jury of Dr. Harrington's report altered the jury's verdict. The thrust of Orlich's argument is that he was denied fair notice and opportunity to cross-examine Dr. Harrington regarding material in her report that Zander did not go into on direct examination. The argument is that Orlich was not aware of his need to refute or respond to the matters in the report. As Orlich states in his reply brief, "[s]ince the report was not supposed to be seen by the jury, Orlich's counsel made the tactical decision not to attack or discredit those aspects of the report that the jury would not see." (Reply, 6, ECF No. 138). Orlich argues that several matters in the report are prejudicial to him on this ground, specifically:

1. The 14 diagnoses listed in the report;

2. The 21 tests that Dr. Harrington administered that are listed in the report;

3. The report's summary of Zander's medical records;

4. The report's depiction of law enforcement officers in general and Lake County Sheriff's Department officers in particular;

5. The report's discussion of the credibility of Zander's husband;

6. The statement in the report that the justice system had failed Zander; and

7. The jargon contained in the report.

4

Orlich also makes arguments regarding hearsay statements, the foundation for Dr. Harrington's opinions, and the non-admission of Plaintiff's medical records into evidence. The Court addresses Orlich's arguments below.

**A. Categories of Purported Denial of Fair Notice**

*1.     Diagnoses*

Out of the fifteen diagnoses listed on the first page of the report, Dr. Harrington specifically mentioned the following eight during her testimony: Intelligence (significant loss), Motor (mildly impaired), Sensory-Perceptual skills (mild to moderate impairment), Reading Comprehension (borderline), Verbal Memory (borderline), Visual memory (extremely low), Attention (significantly deviant), and Post-Traumatic Stress Disorder (severe).[2] The diagnoses of Mild Neurocognitive Impairment and Major Depressive Disorder were implied in the testimony (the general neurocognitive impairment by the list of specific impairments, and the depressive disorder by Dr. Harrington's statements such as "depression is excessive"). An additional four diagnoses were not testified to as diagnoses, but they were included as items to be worked on through Dr. Harrington's recommendations. These diagnoses are Expressive language (mild to moderate impairment); Tactile memory (mild impairment); Cognitive flexibility (mild impairment); and Abstraction, reasoning, and logical analysis (moderate to severe impairment).

That leaves one diagnosis—Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type—that was not heard by the jury at trial. However, the diagnosis of "Attention (significantly deviant)" was mentioned at trial, and in the long list of diagnoses, this diagnosis is not

---

[2]Neither party ordered a complete trial transcript to aid his or her arguments, so there are no citations to an official transcript.

of particularly high importance to this case, where the emphasis was on Zander's PTSD and loss of intelligence.

2.  *Tests Administered*

Dr. Harrington testified in the presence of the jury as to tests administered to Zander, mentioning a few of the tests by name, and referring to more by broad categories. She mentioned by name the Finger Oscillation Test and the MMPI-2 [Minnesota Multiphasic Personality Inventory-2]. By category, she mentioned motor testing, sensory and perceptual testing, language testing, memory testing (both verbal and visual), attention and concentration testing, malingering testing, and personality testing. Orlich cross-examined Dr. Harrington as to personality testing and IQ testing. Dr. Harrington mentioned several results without giving the specific name of the test, such as indicating that Zander was impaired on one of the tests and moderately to severely impaired on another test regarding the auditory and visual testing. The scope of the testing was testified to in fairly detailed form. Aside from providing the names of the tests, the report is duplicative of testimony given at trial.

3.  *Summary of Medical Records*

Orlich identifies twenty-one statements in Zander's medical records that Orlich says he would have used to cross-examine Dr. Harrington regarding the summary of Zander's medical records contained in the report. However, Orlich does not identify where in the report the statements that he would attack are. Of the matters Orlich raises, the Court has found five of the topics in the report: (1) Zander overusing anxiety medicine, (2) depression and feelings of sadness, (3) trouble being around males, (4) social skills and Zander's social life, and (5) feelings of guilt. All five of these topics were raised in testimony at trial. The Court could not find, and Orlich did not point to,

references to the other statements in the report. Thus, regarding this argument the material in the report was covered through trial testimony.

*4.     Statements About Law Enforcement*

Orlich argues that he was deprived of notice of the need to cross-examine Dr. Harrington about statements in the report about Officer Hurst, Officer Harris, and Lake County's failure to treat Zander fairly and address her concerns.

Orlich did bring up Officer Hurst on cross examination of Dr. Harrington, and Dr. Harrington testified that she did not know whether Zander's reporting of the facts to Dr. Harrington was true and that Dr. Harrington reported the matter as Zander reported it to her. The report is duplicative of testimony.

Regarding Officer Harris, the following statements are in the report:

> [Zander] was put into a police car with no seat belt by Officer Harris. Officer Harris drove erratically and at high rates of speed. When he turned a corner a stack of gun cases piled up next to Ms. Zander fell onto her stomach that was recently operated on. . . . When Ms. Zander was transferred from the hospital to the jail she filed a complaint. She was then put into solitary confinement and ultimately falsely charged with assault against her husband. She discovered her tooth was chipped from the injury in the police car when she arrived to the station. Lake County Police never addressed her complaint.

(Mot. Set Aside J. Ex. A, at 5, ECF No. 131-1).

The Court has found no reference in trial testimony to the squad car incident, but regarding the events at the jail, Zander testified to being arrested and put into solitary confinement for allegedly attacking her husband, and Dr. Harrington testified that Zander reported this arrest and confinement to Dr. Harrington.

Additionally, at trial, Officer Michael Miller testified to having responded to three calls involving the Zanders and that other officers had been at the Zander home on other occasions, too.

7

Zander testified that the police were at her house socially every day. Zander's husband also testified that he believed (prior to the events at issue in this litigation) that the police were his friends.

In his closing argument, Orlich brought up the arrest and solitary confinement for the alleged attack on Zander's husband and also mentioned that Zander was trying to "smear" the Lake County police. That is, with the exception of the statements regarding the squad car incident involving Officer Harris, Orlich had notice and took action to mitigate the effects of the statements about law enforcement officers.

5.   *Credibility of Zander's Husband*

Orlich argues that Dr. Harrington's report attacks the credibility of Zander's husband, who Orlich called as a witness at trial. Dr. Harrington did not testify as to the credibility of Zander's husband, but Charlotte Jones, Zander, and Orlich did, all attacking his credibility. Orlich specifically testified that Zander's husband had a history of saying things about Zander that the Lake County Sheriff's Department was unable to corroborate. Further, Trial Exhibit 7 indicates that Orlich told Lake County dispatch on the date of the incident that Zander's husband may not be reporting the truth. Zander brought up Orlich's statement in the exhibit regarding Zander's husband's credibility with Orlich during Orlich's testimony.

Further, Zander's husband testified that he believed that Orlich raped Zander. Orlich argues that the report may have caused the jury to be less likely to believe Zander's husband, but Orlich does not identify what part of Zander's husband's testimony supported Orlich's case. The argument that the report prejudiced Orlich by portraying Zander's husband as dishonest is undermined because Orlich himself attacked the credibility of Zander's husband and because Zander's husband's testimony as a whole supported Zander's case, not Orlich's.

8

6.   *Failure of the Justice System*

Orlich takes issue with a statement in the report that the criminal justice system failed Zander. However, this topic was addressed through testimony. At trial, Zander testified that, regarding the grand jury proceeding against Orlich, she thinks that she was treated very unfairly by the Lake County justice system. She testified that she was not prepared by Lake County officials for the grand jury proceeding and that she was told to only answer yes or no to the questions presented to her. Zander's husband testified that he tried to provide photographs of Zander's injuries to the Lake County prosecutor, but that the prosecutor refused to take them. Dr. Harrington testified that Zander told Dr. Harrington that Zander was not prepared by the prosecutor for Zander's testimony in front of the grand jury. The statement in the report is duplicative of testimony that was properly before the jury and of which Orlich had notice.

7.   *Jargon*

Orlich argues that the jury could reasonably have been unduly impressed by the professional jargon and references to sources cited in the report. Dr. Harrington testified extensively about her resume and her professional training, experience, and research. Though the specific jargon was not in evidence, Orlich did have notice of the jury's exposure to Dr. Harrington's description of her credentials and testimony regarding the testing performed on Zander. That is, the report was not the only material that made Dr. Harrington sound like an expert; her testimony did the same.

Further, Orlich struggles to articulate how he was prejudiced by the jury's exposure to this jargon. He asserts that, though he cannot point to a specific way in which he is prejudiced or a particular matter that he would have explored in cross-examination, there is a reasonable possibility

9

that the jury's decision would have been altered if he had been given notice that the jury would have access to the jargon.

## B. Timing of Jury Verdict

The jury deliberated for a total of three hours. During this time, they elected a jury foreperson, unanimously found in Zander's favor, and determined a compensatory damages award and a punitive damages award. Zander did not request the specific amounts of damages awarded by the jury, which suggests that the damages discussion could have taken a significant amount of time. The brevity of the jury's deliberations weighs in favor of finding the jury's exposure to the report non-prejudicial, as the jury's quick return did not leave much time for extensive review of the materials provided to the jury.

## C. Other Arguments

Orlich argues that the report contains hearsay statements of Charlotte Jones and that Dr. Harrington used Jones's statements as an improper foundation for Dr. Harrington's medical opinion regarding Zander's mental functioning after a 2007 automobile accident. These arguments are unavailing. It is not enough to show that Jones's statements are hearsay; it has already been determined that the report should not have been given to the jury. The statements must also have a reasonable possibility of altering the jury's verdict, and Orlich has made no argument to the Court of the possibility that the statements altered the jury's verdict.

Next, Orlich had notice and the opportunity before and during trial to attack the foundation of Dr. Harrington's opinions. If Orlich did not believe that Dr. Harrington used proper scientific methodology in forming her opinions, then Orlich could have filed a motion pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). If Orlich wanted to argue that Charlotte Jones's

statements, which Dr. Harrington relied upon, were inaccurate, then Orlich could have explored the inaccuracies through cross-examination. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 586-87 (7th Cir. 2000). Having had adequate opportunity to attack the foundation earlier, Orlich will not be given another opportunity after learning that his trial strategy did not yield the desired result.

Orlich also asserts error in the Court's failure to admit Zander's medical records into evidence. However, Orlich withdrew his offer of the medical records into evidence. There is no basis on which to grant a new trial here.

### D. Potential Prejudice

From the above categories, the Court has identified the following matters that are in the report and that were not examined through testimony: the diagnosis of Attention Deficit Hyperactivity Disorder, the names of tests, the squad car incident involving Officer Harris, statements attacking the credibility of Zander's husband, and professional jargon.

With the exception of the credibility of Zander's husband, these matters are not at the core of the dispute here. In light of Dr. Harrington's extensive testimony, the effect of the jury's exposure to the diagnosis of Attention Deficit Hyperactivity Disorder, the names of the tests, and professional jargon is negligible. The incident involving Officer Harris is not closely tied to the allegations against Orlich and is of minimal prejudice. Several witnesses, including Orlich himself, attacked the credibility of Zander's husband, whose testimony as a whole supported Zander's case.

The Court has considered whether there is a reasonable possibility that the jury's three-hour exposure to these matters contained in the report altered the jury's verdict. The Court concludes that there is not. Thus, the motion for new trial is denied.

### E. Motion for Hearing

Because the Court is able to rule on the Motion for New Trial without a hearing, the Motion for Hearing is denied.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion to Set Aside Judgment and for New Trial [DE 131] and the Motion for Hearing on Defendant's Motion to Set Aside Judgment and for New Trial [DE 139].

So ORDERED this 30th day of November, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT
